IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 3, 2000 Session

## ANGELA COLLINS v. TIMOTHY PHARRIS

**Appeal from the General Sessions Court for Dickson County**
**No. 99-5403-CV     Durwood Moore, Judge**

_____

**No. M1999-00588-COA-R3-CV - Filed March 7, 2001**

_____

The petitioner appeals the general sessions court's denial of an order of protection and questions the proper avenue to appeal a general sessions court's ruling on an order of protection. We hold that, because the general sessions court has concurrent jurisdiction with the circuit and chancery courts to hear petitions for orders of protection, this court is the proper one to hear an appeal of the grant or denial of such an order. Because we find that the evidence does not preponderate against the trial court's denial of the order in this case, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM B. CAIN, J. joined.

Connie Reguli, Nashville, Tennessee, for the appellant, Angela Collins.

Jack L. Garton, Dickson, Tennessee, for the appellee, Timothy Pharris.

**OPINION**

Angela Collins and Timothy Pharris had a dating relationship for several years but never cohabited. The relationship ended sometime in early to mid-1998. Ms. Collins lives in Dickson County, Mr. Pharris lives in Sumner County, and both parties apparently work in Davidson County.

Ms. Collins obtained a temporary *ex parte* order of protection in April 1999 in Dickson County General Sessions Court, asserting that Mr. Pharris had paged her and e-mailed her saying things like, "If I can't have you, no one will," and talking about a "big day" that was coming. She also claimed that Mr. Pharris's past violence toward her required her to undergo surgery, that a key to her house was missing, and that he had driven past her house. She stated she was afraid of him.

A hearing was held in general sessions court on May 14, 1999 on Ms. Collins's petition for the order of protection.[1] Both parties were present at the hearing and represented by counsel. After hearing the testimony, the trial court dismissed the petition for an order of protection, but made no findings of fact that are preserved in the record. The form for the order of protection had several choices for the trial judge to mark. He checked the box on the form marked "This cause is dismissed. . ." but did not check either of the two boxes below it to indicate the reason for the dismissal; one reason to dismiss stated that the plaintiff had not appeared, the other stated that the plaintiff had not met the "burden of supporting the allegations."

Following the dismissal of her petition in Dickson County, Ms. Collins sought an order of protection in Davidson County on May 25. Mr. Pharris appeared in Davidson County General Sessions Court and presented the Dickson County dismissal. The Davidson County judge questioned whether the petition was dismissed for failure to meet the burden of proof, because the dismissal did not indicate its reason, and continued the case. The Davidson County judge contacted the Dickson County judge about the dismissal and the Dickson County judge then marked the form to indicate: "This cause is dismissed . . . Plaintiff having failed at [trial] to carry the burden of supporting the allegations of the petition." That same day, Ms. Collins filed a handwritten notice of appeal with the clerk's office, which forwarded the notice to this court.

Another hearing was held in Dickson County General Sessions Court on June 11, 1999, in which Ms. Collins sought, unsuccessfully, to have that court vacate its earlier order and dismiss the action for lack of jurisdiction or transfer the matter to Davidson County. Because the case was then on appeal, the trial court declined to take either action. Ms. Collins's counsel also raised the issue of appeal, advising the trial court that the clerk had forwarded her notice of appeal to the Court of Appeals. She maintained that the circuit court was the proper venue for her appeal if the court refused to vacate its earlier order. Again, the trial court declined to take any action, noting, "This is where I'm going to let it stay, at the Court of Appeals. I'll deny your motion. You may argue with the Court of Appeals that they don't have jurisdiction."

I.

We shall address the jurisdictional question first. Orders of protection may be sought in most counties, including Dickson County, in either a "court of record with jurisdiction over domestic relation matters or the general sessions court of the county in which the petitioner resides." Tenn. Code Ann. § 36-3-601(3)(C). Ms. Collins chose to seek an order of protection in the general sessions court of Dickson County. After it was refused, she sought to appeal the denial to circuit court, presumably with *de novo* review and a new evidentiary hearing.

The Attorney General of Tennessee has issued an opinion on precisely the issue of whether appeals from general sessions court orders of protection should be taken to the circuit court or to this court. Tenn. Op. Att'y. Gen. No. 98-043, 1998 WL 129995. In that opinion, the Attorney General

---

[1]The temporary order of protection expired that same day.

was asked whether a party had the right to appeal the issuance or denial of an order of protection, and if so, whether general sessions court decisions should be appealed to the circuit court or to this court. The Attorney General answered the first question in the affirmative, relying on general statutes providing for appeals. *Id.* at *1 (citing Tenn. Code Ann. § 27-5-108 (appeals from general sessions courts go to the circuit courts) and § 16-4-108(a)(1) (appeals from "all civil cases" go to this court)).

With regard to the proper forum for appeal, the opinion throughly considered and addressed all relevant authority on the issue. Therefore, we quote generously from it, as follows:

> In Tennessee, orders of protection may be issued by both the circuit court and the chancery court in each county. Tenn. Code Ann. § 36-3-601(3)(A)-(C) and (E). Additionally, the general sessions court in many counties exercises concurrent jurisdiction to issue or deny orders of protection. Tenn. Code Ann. § 36-3-601(3)(B), (C) and (E). *See also Barker v. Harmon*, No. 01-A01- 9306-CV-00252, 1993 WL 377623 (Tenn. Ct. App. September 24, 1993).

> Concurrent jurisdiction among the circuit, chancery and general sessions courts creates an apparent anomaly in the appeals process, granting two appeals to some litigants, but only one appeal to others. Ordinarily, under the general statutes, decisions of the general sessions court may first be appealed *de novo* to the circuit court, and second from the circuit court to the Court of Appeals. Tenn. Code Ann. §§ 27-5-108 and 16-4-108(a). On the other hand, decisions of the chancery court and the circuit court may be appealed only to the Court of Appeals. Tenn. Code Ann. § 16-4-108(a). If this scheme were followed in appeals of orders of protection, parties to a decision originating in general sessions court would get two reviews of the decision, while parties to a decision originating in circuit or chancery court would get only one.

> Tennessee courts have resolved such anomalies by holding that when an inferior court such as the general sessions court exercises concurrent jurisdiction with the circuit and chancery court, appeals from the inferior court should properly be taken to the Court of Appeals just as appeals from the circuit and chancery court are. *In re Scalf's Adoption*, 144 S.W.2d 772 (Tenn. 1940); *Cooper v. Thompson*, 710 S.W.2d 944 (Tenn. Ct. App. 1985). In *Scalf's Adoption*, the Supreme Court examined a statute conferring upon a juvenile court concurrent jurisdiction with the circuit and chancery courts over divorce cases. 144 S.W.2d at 774. A separate statute provided that juvenile court decisions should be appealed to the circuit court. *Id.* at 773. The Court held, however, that concurrent jurisdiction "is a jurisdiction the exercise of which is reviewable in the Court of Appeals or in this court" rather than in circuit court. *Id.* at 774.

Similarly, in *Cooper v. Thompson*, a legitimation statute granted the juvenile court concurrent jurisdiction with the circuit court and the probate court to legitimate children. 710 S.W.2d at 945. The legitimation statute contained no provision regarding appeals. Nevertheless, a separate statute provided for appeal to circuit court from any final disposition of a child by the juvenile court. *Id*. The Court, however, distinguished the juvenile court's concurrent jurisdiction in legitimation matters from the juvenile court's "ordinary" jurisdiction. *Id*. The Court held that "[w]ithout express statutory authority to the contrary, we cannot envision an appeal between two courts exercising concurrent jurisdiction which would enable a party to have two trials of equal stature on the same matter. Accordingly, we hold that in matters of legitimation . . . . the appeal from the court of original jurisdiction is to the Court of Appeals." *Id*. at 945-946.

*Scalf's Adoption* and *Cooper* indicate that the issuance or denial of orders of protection by the general sessions court should be appealed directly to the Court of Appeals rather than to circuit court. Tenn. Code Ann. § 36- 3-601 provides that the general sessions court has concurrent jurisdiction with the circuit court and the chancery court over orders of protection. There is no express statutory provision for appeal of orders of protection. Nevertheless, the concurrent jurisdiction exercised over orders of protection by the general sessions court under Tenn. Code Ann. §§ 36-6-601 *et seq*. should be distinguished from its "ordinary" jurisdiction, which is set out at Tenn. Code Ann. §§ 16-15-501-505. The appeals process from orders of protection should also be distinguished from the "ordinary" appeals process from the general sessions court to circuit court set out at Tenn. Code Ann. § 27-5-108. Otherwise a party to a general sessions order of protection would "have two trials of equal stature in the same matter." *Cooper*, 710 S.W.2d at 946.

This reasoning is supported by *Williams v. Clyce*, [no number in original] slip op. (Tenn. Ct. App. Western Section May 23, 1985) modified by order *per curiam* (Supreme Court of Tennessee at Jackson November 18, 1985). The issue in *Williams v. Clyce* was whether jurisdiction over an appeal from a general sessions court vested with original probate jurisdiction by a private act lay in circuit court or in the Court of Appeals. *Clyce*, slip op. at 1. Chancery courts ordinarily had exclusive probate jurisdiction. *Id*., slip op. at 5. The Court of Appeals reasoned that "the legislature intended to vest the General Sessions Court of Madison County with all the powers of the Chancery Court," effectively transforming the general sessions court into "the Probate Court of Madison County with all of the powers and privileges of the chancery court which includes its status as a court of record from which an appeal will lie .... [directly] to the Court of Appeals." *Id*., slip op. at 7. The Supreme Court amended the Court of Appeals' judgment in other respects, but agreed with the Court of Appeals that "appeals from the probate division of the General Sessions Court of Madison County should be taken to the Court of Appeals rather than to the Circuit

Court." *Williams v. Clyce*, order *per curiam* (Supreme Court of Tennessee at Jackson November 18, 1985).

This reasoning is also supported by appellate procedure in other domestic relations cases over which the general sessions court has concurrent jurisdiction. Under Tenn. Code Ann. § 16-15-501(b) and (c), the general sessions courts of several counties share with the circuit court and the chancery court concurrent jurisdiction over divorce cases. The statute does not delineate the appeals process from general sessions court. Nevertheless, a number of cases demonstrate that appeals from divorces in general sessions court are taken to the Court of Appeals. *See, e.g., Griffin v. Stone*, 834 S.W.2d 300, 301 (Tenn. Ct. App. 1991); *Page v. Page*, 672 S.W.2d 423, 424 (Tenn. Ct. App. 1984); *Pairamore v. Pairamore*, 547 S.W.2d 545, 546 (Tenn. Ct. App. 1977).

Finally, the Tennessee Rules of Civil Procedure also support this reasoning. The rules of civil procedure apply to a general sessions court "in cases where such courts by special or private act exercise jurisdiction similar to that of circuit or chancery courts." Tenn. R. Civ. P. 1. On the other hand, the rules do not apply "to general sessions courts in the exercise of jurisdiction conferred by general statutes." Tenn. R. Civ. P. 1 committee comment. Under Tenn. Code Ann. § 36-3-601 *et seq*., the general sessions court exercises "jurisdiction similar to that of circuit or chancery court[]," so the rules of civil procedure apply in a general sessions court issuing or denying orders of protection. Because the general sessions court functions procedurally as does a circuit or chancery court in orders of protection cases, it is reasonable that appeals from its decisions in such cases should go to the Court of Appeals.

*Id.* at *1-3.

We find this analysis thorough and the reasoning persuasive. Thus, we hold that general sessions courts' decisions on the grant or denial of orders of protection are properly appealed to this court, because those courts hold concurrent jurisdiction with circuit and chancery courts in this area. We further note that this court, in an opinion regarding an appeal of an order of protection, recently stated, "A direct appeal to this court is appropriate because . . . the general sessions court and the circuit court have concurrent jurisdiction over the issuance or denial of an order of protection." *Garrison v. Burch*, No. M1999-02819-COA-R3-CV, 2001 WL 47001 at *1 n.2 (Tenn. Ct. App. Jan. 22, 2001); *see also Haskett v. Haskett*, No. E1999-01471-COA-R3-CV, 2000 WL 228261 (Tenn. Ct. App. Feb. 29, 2000) (no Tenn. R. App. P. 11 application filed) (reversing a general sessions court's order of protection, implicitly holding that this court was the proper avenue for the appeal).

II.

We now turn to whether the evidence preponderates against the denial of the order of protection. To be entitled to an *ex parte* order of protection, a petitioner must show that "good cause" for the order exists. Tenn. Code Ann. § 36-3-605(a). "An immediate and present danger of domestic abuse to the petitioner shall constitute good cause for purposes of this section." *Id*. Within fifteen days after the issuance of such an order, the court must hold a hearing, after which it may either dissolve the previously issued *ex parte* order or extend the order of protection for a definite time. Such extension may only be based on proof by the petitioner of "an allegation of domestic abuse." Tenn. Code Ann. § 36-3-605(b). The petitioner must establish such evidence by a preponderance of the evidence. *Id.*

The applicable statute defines domestic abuse as "inflicting or attempting to inflict physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, or malicious damage to the personal property of the abused party." Tenn. Code Ann. § 36-3-601(1) (Supp. 2000). Our General Assembly has stated its intent in passing the laws regarding domestic abuse as follows:

> The purpose of this part is to recognize the seriousness of domestic abuse as a crime and to assure that the law provides a victim of domestic abuse with enhanced protection from domestic abuse. . . . [T]he general assembly intends that the official response to domestic abuse shall stress enforcing the laws to protect the victim and prevent further harm to the victim, and the official response shall communicate the attitude that violent behavior is not excused or tolerated.

Tenn. Code Ann. § 36-3-618 (1996).

Thus, a protective order is intended to protect the victim of abuse and to prevent further harm to the victim. Injunctive in nature, it may prohibit the respondent from among other things, committing or threatening domestic abuse, contacting the petitioner, or stalking the petitioner. Tenn. Code Ann. § 36-3-606(a). Violations are punishable as contempt. Tenn. Code Ann. § 36-3-612. Accordingly, an order of protection is appropriate only where there is sufficient evidence that the victim needs the protection available.

A statement of the evidence from the hearing states:

> The petitioner testified that she and the respondent had dated for several years, but they had never cohabited. Her testimony was that they had broken up approximately one year earlier, and that she had not even seen the respondent in over six months. The petitioner testified about an incident that occurred in 1996 concerning an alleged assault committed upon her by the respondent. A police report was made of the incident but she declined to pursue the matter further and, in fact, she continued to see the respondent. The petitioner testified that the respondent entered her home in

July of 1998, but admitted that her mother had given the respondent a key and permission to enter in order to retrieve some of his personal property. The petitioner further testified that the respondent had indicated that he had driven by her house and had seen that her lawn was cut, but the respondent testified that he was in Dickson County picking up a part for some equipment, and had driven by her house on the way back home. The respondent testified that was the first time that he had been in Dickson County in almost a year.

The respondent testified that he had loaned the petitioner some money, and that she had refused to pay him back. He testified that he sued the petitioner in Sumner County, and that he dismissed the suit because the petitioner promised to pay him out of court. The respondent testified that the petitioner refused, once the suit was dismissed, to pay him. He testified that his pages to the petitioner were in reference to the fact that he was going to refile the civil lawsuit against her. He also testified that the petitioner had paged him more than once, and had sent several e-mails to him.

The petitioner testified that in all of her communications with the respondent, that he had never threatened physical violence, and that he had never come around her for the purpose of threatening violence, but that she had inferred that from the messages.

Thus, although Ms. Collins testified she was afraid of Mr. Pharris, she also admitted that he had not threatened her or come around her in order to threaten her. Her concern arose, apparently, from messages he had left her. Mr. Pharris explained his reasons for contacting Ms. Collins. In situations such as this one, the credibility of the witnesses plays a crucial role in weighing the evidence. Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses. *Gillock v. Board of Prof'l Responsibility*, 656 S.W.2d 365, 367 (Tenn.1983). Based upon the evidence presented, and the deference given to the trial court's judgments regarding the credibility of witnesses, we cannot say that the evidence preponderates against the trial court's dismissal of the petition for an order of protection.

III.

Ms. Collins also asserts that the trial court erred by amending the form order dismissing her petition for an order of protection *ex parte* to include the finding that she had failed to meet her burden of proof. There was no dispute that Ms. Collins appeared in order to prosecute the matter, and no dispute the order of protection was denied.[2] Thus, we are unable to discern how Ms. Collins was harmed by the trial court's correction or clarification of its order. Pursuant to Tenn. R. Civ. P.

---

[2]At the June 11 hearing before the same trial judge, Ms. Collins did not argue that the judge's marking the form, "failed at [trial] to carry the burden of supporting the allegations of the petition," was an inaccurate reflection of his ruling.

60.01, a court is authorized to correct errors in judgments arising from oversights or omissions at any time on its own initiative. Thus, we find no error in the clarification or correction of the judgment form and also find no harm to petitioner from such correction.

This case is remanded to the trial court for such further proceedings as may be necessary. Costs are taxed to the appellant, Angela Collins, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE